Nott, Justice,
dissented. All the grounds taken in. arrest of judgment in this case may be reduced to two ; 1st, Whether under that section of the constitution of the United States, which gives to Congress the power “to coin money, to regulate the “ value thereof and of foreign coin, and to provide “ for the punishment of counterfeiting the securities and current coin of the United States, article 1. ft federal constitution, section 8th,” is also given the power to provide for the punishment of passing any of the current coin thereof, knowing it to be counterfeit. 2d, If it is whether the states by delegating such power to Congress, have constructively parted with all the powers which they had before over the. *798 subject and vested it exclusively in the general government,
Bef°re I proceed to a particular examination of those questions, I would premise that the United States must be held to possess all the attributes of sovereignty in the most ample degree, over all matters expressly delegated to them by the constitution, as well as over all such as are necessary to carry those so delegated into effect; and among those the power to carry their own laws into operation by providing proper punishment for them, is one. That cannot be considered a sovereign independent state which depends on another to carry its laws into execution. A want of this power was the great objection to the old confederation, and to remedy the evil was a great object of the new one. This would be very badly effected by merely granting such power to the general government, and leaving the individual states the power to arrest it, by interposing their own laws. The constitution in my opinion admits of no such construction. The judicial power of the United States is not only constructively, but expressly made commensurate with the legislative. It is made to extend “ to all cases arising under the laws of the United States.” The words are, <e The judicial power (of the United States) shall extend to all cases in law and equity, arising under this constitution, the laws of the United States, and treaties made, or which shall be made under their authority.” This is a case {(arising "under a law of the United States,” for by the act of *799 Congress, it is made highly penal to counterfeit the current coin of the United States, or to pass it knowing it to be counterfeit. Unless, therefore, that act of Congress is unconstitutional, this is one of the cases expressly and exclusively delegated to the courts of the United States, for if their power extends to all the cases of this description, there can be none to which it does not extend.
It is no answer to say it is a case also • arising under a law of the state, for the constitution expressly declares that u this constitution and the laws of the United States which shall be made in pursuance thereof, shall be the supreme law of the land, and the judges in every state shall be bound thereby, any thing in the constitution or lavvs of any state to the contrary notwithstanding.-” Any act of a state, therefore, repugnant to a constitutional act uf Congress immediately becomes a'dead letter. This construction may also be inferred from the nature of the other cases enumerated in the same section of the constitution, 11 all cases affecting ambassadors, other public ministers and consuls, and all cases of admiralty and maritime jurisdiction.” I believe it is not pretended that the jurisdiction of the state courts extends to cases of this description ; yet the same construction that would extend it to cases arising under a law of the United States,” would embrace those also,
This construction is further strengthened by a ■view of the class of cases which immediately follows *800 jn the same section of the constitution, “ to control versies to which the United States shall be a party 5 to controversies between two or more states ; between citizens of different states,” &c. In these cases, and those connected with them, the word u all,” is dropped; thereby leaving to the state courts jurisdiction concurrent with the courts of the United States. If then this is one of the cases over which the general government has exclusive jurisdiction,, the state law becomes inoperative ; for a state ean-hot give to itself jurisdiction by legislating on a subject exclusively assigned to the United States.
This brings us to the enquiry, whether the act of Congress, providing for the punishment of passing counterfeit money, knowing it to be counterfeit, is constitutional; the consideration of which will be involved in the question first above made in arrest of judgment.
That Congress have power to coin money, to regulate the value thereof, and of foreign coin, and to provide for the punishment of counterfeiting it, is admitted. It is also admitted, that they have the power to make all laws which shall be necessary for carrying into execution the foregoing powers. Is it necessary then, to enable Congress to carry into execution the power to coin money, to regulate the value thereof, and to provide for the punishment of counterfeiting it, that they should have power to punish for passing it, knowing it to be counterfeit ? If it is, then that power is expressly *801 delegated to them. Or, to put the question in another form, Is it necessary to protect the current coin of the United States, by imposing penalties on those who shall pass it, knowing it to be counterfeit? If it is, then to afford it that protection is one of the powers expressly delegated to the general government. Indeed, to use the words of an eminent commentator on the constitution, (1 Fed. 299.) i( Fad that instrument been silent on this head, there can be no doubt that all the particular powers would have resulted to the general government by unavoidable implication. No axiom is more clearly ' established in law, or in reason, than that whenever the end is required, the means are authorised; whenever general power to do a thing is given, every necessary power to do it is included ; and that such protection is necessary to the current coin of the United States, no farther proof can be required than that Congress and all the states in the Union, (as long as they had power over the subject,) have furnished it. To have given to Congress the power to punish counterfeiters of the coin, while those who circulated it were to go unpunished, would have furnished it but little security; and to have left this important power to the courtesy of the states would have been sliding back into the same situation which we were in under the old confederation, and defeating the principal, object for which the new one was formed.
Being of opinion, therefore, that Congress have not only the power of punishing for counterfeiting *802 thie coin of the United. States, but also for passing it, knowing it to be counterfeit, it only remains to examine the second question, to wit: whether the states, by delegating such power to Congress,, have parted with all power over the subject themselves.
It is a matter of no small difficulty to mark out with precision the line of jurisdiction between the United States and the individual states, and perhaps we shall not meet with a more correct view of th e subject than is taken by the same eminent writer before quoted. He reduces the exclusive delegation of power to the United States, or the alienation of state sovereignty to three cases : 1st, Where the constitution in express terms grants exclusive authority to the Union: 2nd, Whére it grants in one instance an authority to the Union, and in another prohibits the states from exercising like authority: and 3rd, Where it grants an authority to the Union, to which a similar authority in the states would be absolutely and totally contradictory and repugnant. Under this last case, he instances that clause which declares that Congress shall have the power “ to establish an uniform rule of naturalization throughout the United States.” This, observes the writer, must necessarily be exclusive, because if each state had the power to prescribe a distinct rule, there could be no uniformity. Now if the United States have the power to “ regulate the value of money apd of foreign coin, and to provide for the punishment of counterfeiting the current coin of the United States, they must have the exclusive jurisdie- *803 tioti ; otherwise, two governments equally sovereign and independent, would have jurisdiction over the same subject; and the value of the coin,' and the . , ,» . . . punishment ior counterfeiting, might be different in every state. The exercise of such authority by the states would be “ absolutely and totally contradictory and repugnant” to the exercise of it by the United States. Indeed, concurrent jurisdiction in criminal cases, between independent governments is incompatible with sovereignty; and the United States and the individual states are as sovereign, and independent of each other, in all cases of a criminal nature within their respective jurisdictions, as the states themselves are.
We need only look to the consequences of a contrary doctrine, to be convinced of this truth. The United States punish the counterfeiting or passing of counterfeit money with fine and imprisonment; the state of South-Carolina punishes the same offence with death. If a mán, put on his trial for such an offence should plead in bar a conviction or acquital in a court of the United States, would such a plea be sustained by our courts? Or, let the punishment be reversed; and would such a plea be sustained in a court of the United States? It is impossible not to see that it would not and ought not. Neither the courts of the United States, nor of the individual states will hold an acquittal or conviction by one, a bar to -a trial by the other. Each must, and will insist upon the right of inforcing its own penal laws, and its jurisdiction cannot be usurped by the other. The rig *804 to punish, (says an eminent writer,) “ arises from the right of self defence.” A state commonly punishes offences against its own laws, and an offence against the laws of the United States, is no offence against the laws, or against “ the peace and dignity” of the state of South-Carolina. One, therefore, must have the whole jurisdiction, or a person may be twice punished for the same act; first fined and imprisoned by the courts of the United States, and then hanged by the state, which is not only contrary to the express letter of the constitution, but contrary to the eternal and unerring principles of justice.
The case put of concurrent jurisdiction of courts in the same state is not analagous. There the of-fence is against the same laws and against the same sovereignty; the crime and punishment are the same, and the law is satisfied with a trial in either tribunal having jurisdiction.
The rule then must be a correct one, that where any power is delegated to the United States, and the exercise of such power by an individual state is incompatible with such delegation, it must exclusively belong to the general government. The advocates for a concurrent jurisdiction derive no support from the amendment of the constitution which has been relied on. It does not say that the powers not expressly delegated, &c. shall be reserved; but that the enumeration of certain rights shall not be eon-strued to deny or disparage others retained by the *805 people; and whether by express or necessary implication, the effect is the same.
It is further argued that prohibiting the states from making any thing hut gold and silver a tender in the payment of debts, necessarily implies a powei* in them to make those so. In answer to which, after what has been already said, I will only observe that I am not disposed to admit such an inference. Admit it, however, to be correct, it only proves, that a state may make certain foreign coins current within their respective jurisdictions, which are not made so by Congress. But that introduces no conflict of jurisdiction. For the power of Congress to punish extends only to the current coin of the United States. Until, therefore, Congress have made a foreign coin current in the United States, they cannot punish for counterfeiting it. But that was not the ground on which this case was decided in the court below, neither has it been made a ground of argument here. It is not contended on the part of the state that the money passed by the prisoner was not the current eoin of the United States.
I can not feel the force of the distinction taken between the coin made in the United States, and the foreign coin made current here. The words of the constitution are, “ current coin,” which I understand to mean as well foreign coin made current by act of Congress, as coin made at the mint of the United States. The conclusion, therefore, that I have tome to is, that the power of punishing the coun- *806 teríHting of foreign coin made current in the United States by act of Congress or passing the same, know-iag it to be counterfeit, belongs exclusively to the general government, and the trial of persons for those offences, belongs exclusively to the courts of the United States. The administration of criminal justice is not a privilege which we ought to be anxious to retain, though a painful duty which we are sometimes bound to perform.
I am of opinion, the judgment ought to be arrested for want of jurisdiction. But as a majority of the court differ from me on this point, it becomes necessary to give an opinion also on the ground of a new trial. The first ground is, that as our act makes it a distinct capital crime to keep implements for counterfeiting money in one’s possession, such evidence ought not to have been admitted in the court below on an indictment for merely passing counterfeit money. Having given an opinion on this point in another case, I do not feel under any necessity to go* fully into the reasons for the opinion I now give. I take the rule of law to be, that one distinct offence shall not be given in evidence to convict a person of another, unless the proof of one goes directly to prove the other. Thus, for instance, proof that the defendant made the identical dollar in question, might have been proper, because it would have proved unequivocally that he knew it to be counterfeit. But proving that he had implements for coining in his possession, did not prove that he knew this dollar to be counterfeit, any more than proving that a *807 man stole a horse, for which he was not indicted, * would be proof that he stole another for which he was indicted. Unless, indeed, there was some proof, by comparison or otherwise, that these were the moulds in which the dollar passed by the defendant was cast. Rex vs. Ball, 1 Campbell, 324. I am in favour of the motion in arrest of judgment as well as for a new trial.
*808 I